IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00156-STV

WILLIE DAVIS,

    Applicant,

v.

D. BAYSORE, Complex Warden,

    Respondent.

---

**ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

Entered By Chief United States Magistrate Judge Scott T. Varholak

    This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) filed *pro se* by Applicant Willie Davis, a federal prisoner in the custody of the Bureau of Prisons ("BOP"). Respondent filed a Response to Order to Show Cause (ECF No. 20) and Notice of Replacement Exhibit for Respondent's Response to Order to Show Cause (ECF No. 21). Mr. Davis filed a Reply (ECF No. 22) and Amended Reply (ECF No. 23).  The matter is before the Court on the parties consent to have a United States magistrate judge conduct all proceedings in this civil action, including trial, and to order the entry of a final judgment (ECF Nos. 14, 15)

    After reviewing the pertinent portions of the record in this case, the Court FINDS and CONCLUDES that the Application should be denied as set forth below.

**I.    Background**

    On July 29, 2009, Mr. Davis pled guilty to obstructing interstate commerce by robbery, felon in possession of a firearm, and use of a firearm during the commission of

a crime of violence and was sentenced to a 216-month term of imprisonment by the United States District Court for the Western District of Tennessee. (ECF No. 20-1 at 5, 16-17, 21-22). While serving that sentence, Mr. Davis was found guilty of possessing contraband in prison and was sentenced by the United States District Court for the Middle District of Pennsylvania on June 27, 2017, to a 37-month term of imprisonment to be served consecutive to his previous sentence. (*Id.* at 5, 22, 25-26). These sentences were aggregated, resulting in a total term of imprisonment of 253 months. (*Id.* at 5, 18).

Based on his aggregated term of imprisonment, Mr. Davis was eligible to earn a total of 1,138 days of good conduct time ("GCT") but due to numerous violations of institutional rules and regulations, he has been disallowed 567 days of GCT and has forfeited 108 days of GCT, which results in a total loss of 675 days of GCT. (*Id.* at 6, 28, 30-36). Mr. Davis's current projected release date via GCT is November 17, 2026, and his "federal date of offense" is January 14, 2007, the earliest date of offense for his multiple counts. (*Id.* at 5-6, 15, 18, 28).

On December 24, 2023, Mr. Davis was issued an incident report for the prohibited act of Engaging in Sexual Acts (Code 205). (ECF No. 21-1 at 6, 57). On December 31, 2023, a copy of the rewritten incident report was delivered to Mr. Davis, and he was advised of his rights concerning the disciplinary process. (*Id.* at 57-59).

On January 2, 2024, the Unit Discipline Committee ("UDC") reviewed the incident report and referred the charge to a Disciplinary Hearing Officer ("DHO") for further review. (*Id.* at 6-7, 59-63). Although Mr. Davis was given a copy of the Notice of Discipline Hearing and was advised of his rights, he refused to sign the notice. (*Id*. at 7, 61-63).

2

On February 13, 2024, Mr. Davis attended the DHO hearing. (*Id.* at 7, 65). According to the DHO Report, he did not request a staff representative and/or witnesses and failed to present any documentary evidence. (*Id.* at 65-66) During the hearing, Mr. Davis denied the charge against him, stating that the report was "falsified" and was made in "retaliation." (*Id.*). In finding that Mr. Davis had committed the prohibited act of engaging in a sexual act (Code 205), the DHO considered: (1) the incident report, (2) the staff memorandum accompanying the incident report, (3) the investigating lieutenant's review of video footage, (4) Mr. Davis's written statement provided to the UDC that he "was asleep at 5:00 am count on 12/24/2023"; and (5) the lack of documentary evidence presented by Mr. Davis. (*Id.* at 66-67). The DHO sanctioned Mr. Davis with 1 day of disciplinary segregation as well as the loss of 27 days of GCT, 30 days of television privileges, 90 days of commissary and phone privileges, and 60 days of recreation time. (*Id*. at 67). The DHO Report was delivered to Mr. Davis on March 14, 2024. (*Id. a*t 68).

Mr. Davis initiated this action on January 15, 2025. (ECF No. 1). In the Application he claims that:

(1) the BOP improperly deprived him of 675 days of GCT because the BOP lacked authority under 18 U.S.C. § 4042(a)(3) and 28 C.F.R. § 541.3(a) to deprive him of those credits based on 18 U.S.C. § 4042(d), which exempts all federal penitentiaries and prisons, including the ADX;

(2) the BOP "arbitrarily applied 18 U.S.C. § 4042(a)(3), by misapplying 18 U.S.C. § 3624(b)(2), to substantively modify part of the Applicant's final sentence, to reduce 108 days of earned Good Conduct Time credits from the Applicant's statutory release date"; and

(3) the DHO denied him due process by not allowing his witness to testify in support of his defense during the February 13, 2024 DHO hearing, which resulted in the loss of 27 days of GCT.

(*Id.* at 2-22.). For relief, Mr. Davis requests "that his GCT credits be restored" and that the BOP "immediately release [him] from custody." (*Id.* at 24).

In the Response, Respondent argues that the Application should be denied because: (1) Mr. Davis's "contention that the BOP is not authorized under Section 4042(d) to revoke his GCT is based on a misreading of the statute"; (2) Mr. Davis's "argument that the BOP cannot revoke his GCT because it is already vested under the [Sentencing Reform Act] is factually and legally incorrect because his GCT is subject to the [Prison Litigation Reform Act] and does not vest until the date of his release"; and (3) "the DHO had evidence to support revoking 27-days of GCT for Davis's Code 205 violation." (ECF No. 20 at 4-14).

## II.     Standards of Review

The Court must construe Mr. Davis's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).  Habeas corpus relief is warranted only if Mr. Davis "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

In the context of prison disciplinary proceedings, it is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment. *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996); *see also Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (citing *Mitchell* in the context of a federal prisoner challenging a prison disciplinary conviction). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Furthermore, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454 (internal citation and quotation omitted).

### III.  Discussion

#### A.  Claim One: Loss of 675 days of GCT

Mr. Davis first claims that the BOP improperly deprived him of 675 days of GCT because the BOP lacked authority to do so under 18 U.S.C. § 4042(d).

Section 4042 establishes the general duties of the BOP. *See Yousef v. Reno,* 254 F.3d 1214, 1219 (10th Cir. 2001) ("[t]he Attorney General, through the BOP regulations, has delegated his plenary authority over the management of federal prisons" under 18 U.S.C. §§ 4001(b), 4042(a)). For example, Section 4042(a)(1) provides that the BOP shall "have charge of the management and regulations of all Federal penal and correctional institutions," and Section 4042(a)(3) requires the BOP to "provide for the protection, instruction, and **discipline** of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(1), (3) (emphasis added); *see also Rivera v. Toft,* 477 F.2d 534, 536 (10th Cir. 1973) ("Prisoner discipline is one of the specific provisions of Section 4042."). Thus, the BOP's inmate discipline program is expressly authorized by 18 U.S.C. § 4042(a)(3). Section 4042(d), however, provides that "[t]his section shall not apply to military or naval penal or correctional institutions or the persons confined therein." 18 U.S.C. § 4042(d); *see also United States v. Joshua,* 607 F.3d 379, 384 (4th Cir. 2010) ("Congress also created a military penal system distinct from the BOP."); 18 U.S.C. § 4001(b)(1) (providing that "[t]he control and management of Federal penal and correctional institutions, except military or naval institutions, shall be vested in the Attorney General"). The rules governing the BOP's inmate discipline program are outlined in the Code of Federal Regulations, 28 C.F.R. § 541.1 to § 541.8. *See* 28 C.F.R. § 541.1 (Purpose); § 541.2 (Application); § 541.3 (Prohibited acts and available sanctions); § 541.4 (Loss of good conduct sentence credit as a mandatory sanction); § 541.5 (Discipline process); § 541.6 (Mentally ill inmates); § 541.7 (Unit Discipline

Committee (UDC) review of the incident report); and § 541.8 (Discipline Hearing Officer (DHO) hearing).

Here, Mr. Davis contends that Section 4042(d) "expressly prohibits the BOP from applying 18 U.S.C. § 4042(a)(3) to ADX" because all federal penitentiaries are "correctional institutions" within the meaning of Section 4042(d) because Congress has defined "correctional institution" as "any prison" in other statutes, such as 34 U.S.C. § 12124(b)(1) (Correctional job training and placement) and 29 U.S.C. § 3305(e)(1) (Programs for corrections education and other institutionalized individuals). (*See* ECF No. 1 at 2-8). Mr. Davis further argues that the BOP is prohibited from promulgating 28 C.F.R. § 541.1 to § 541.8, the regulations governing the BOP's inmate discipline program, which includes the loss of good conduct sentence credits for disciplinary infractions. (*Id.*). Accordingly, he claims that the BOP improperly reduced his GCT by 675 days for violations of institutional rules and regulations. (*Id.*). Respondent contends that Mr. Davis's position is incorrect because 18 U.S.C. § 4042(a)(3) authorizes the BOP to discipline inmates in its custody, including sanctioning inmates for misconduct with the forfeiture of earned GCT credits, and 18 U.S.C. § 4042(d) does not exempt federal penitentiaries, including the ADX, because it is not a military or naval prison. (*See* ECF No. 20 at 6). The Court agrees with Respondent.

Mr. Davis's interpretation of 18 U.S.C. § 4042(d) is incorrect. Section 4042(d) provides as follows: "This section shall not apply to military or naval penal or correctional institutions or the persons confined therein." 18 U.S.C. § 4042(d). Contrary to his position that the use of the second "or" separates "correctional institutions" from the words "military

or naval," the Court finds that the language of the statute makes clear that the word "correctional institution" is modified by "military or naval," such that § 4042(d) only applies to military or naval correctional institutions. *See also* 18 U.S.C. § 4001(b)(1) (providing that "[t]he control and management of Federal penal and correctional institutions, except military or naval institutions, shall be vested in the Attorney General"); 18 U.S.C. § 4042(a)(1) (the BOP shall "have charge of the management and regulations of all Federal penal and correctional institutions"); 28 C.F.R. § 541.2 (BOP's inmate discipline programs apply to "inmates in [BOP] custody" and "inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with the [BOP]"); *Joshua,* 607 F.3d at 384 ("Congress also created a military penal system distinct from the BOP."). Mr. Davis fails to recognize that the statute uses the term "military or naval" to describe the type of "penal or correctional institutions" that are exempt from Section 4042. As a result, Section 4042(d) does not apply to the ADX because the ADX is neither a military correctional institution nor a naval correctional institution. Thus, the BOP is authorized under Section 4042(a)(3) to implement regulations governing its inmate discipline program, which includes the authority to revoke GCT credits as a sanction for disciplinary convictions under 28 C.F.R. § 541.3. Accordingly, Mr. Davis is not entitled to habeas relief for Claim One.

### B. Claim Two: Modification of Sentence

Mr. Davis next claims that the BOP "arbitrarily applied 18 U.S.C. § 4042(a)(3), by misapplying 18 U.S.C. § 3624(b)(2), to substantively modify part of the Applicant's final sentence, to reduce 108 days of earned Good Conduct Time credits from the Applicant's

statutory release date." (ECF No. 1 at 12-17). He argues that this loss of GCT occurred because the BOP improperly classified his sentence as subject to the Prison Litigation Reform Act ("PLRA") rather than as a sentence imposed under the Sentencing Reform Act ("SRA"). (*Id.*).

On October 12, 1984, the SRA was enacted into law and became effective on November 1, 1987. *See United States v. Paiz,* 905 F.2d 1014, 1030 (7th Cir. 1990) (recognizing that the SRA applies to inmates sentenced for offenses committed on or after November 1, 1987). The SRA enacted 18 U.S.C. § 3624(b), which provided prisoners an opportunity to earn GCT credit for each year served that vested at the end of that year and could not be disallowed in the future. *See* 18 U.S.C. § 3624(b) (1987); *see also* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1976 (1984); *Shelton v. Jordan,* Civil Action No. 3:CV-13-0059, 2014 WL 203311, at *2 (M.D. Pa. Jan. 17, 2014) (recognizing that the SRA initially enacted Section 3624(b) in 1987, and that under this version of the SRA, GCT earned each year is vested at the end of that year and cannot be disallowed in the future). This means that an inmate whose sentence was imposed for offenses committed between November 1, 1987 and September 12, 1994[1], cannot have his or her earned GCT disallowed or forfeited once the credits are vested at the end of the year. Congress, however, has amended 18 U.S.C. § 3624(b) multiple times, including when it enacted the PLRA on April 26, 1996. *See* Pub. L. No.

---

[1] On September 13, 1994, 18 U.S.C. § 3624(b) was amended due to the enactment of the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"). *Shelton,* 2014 WL 203311, at *3. Thus, the GCT of federal inmates convicted of crimes committed on or after September 13, 1994, but before enactment of the PLRA on April 26, 1996, are governed by this version of the statute. *Id.*

9

104-134, 110 Stat. 1321.  The PLRA requires "exemplary compliance" with prison rules for GCT, 18 U.S.C. § 3624(b)(1), and added subsection (b)(2), which provides that "credit awarded under this subsection after the date of enactment of the [PLRA] shall vest on the date the prisoner is released from custody," 18 U.S.C. § 3624(b)(2).  This means that an inmate who was sentenced for offenses committed after April 26, 1996, can have his or her earned GCT disallowed or forfeited throughout service of the inmate's sentence.  And there are at least two ways under the PLRA that GCT can be reduced: (1) the BOP may "disallow" a given amount of GCT during a calendar year, thus reducing the amount (up to a maximum of 54 days per year) that the prisoner earns in that year; and (2) GCT earned in prior years may be forfeited or revoked after a prisoner is found to have committed an institutional violation.  See 18 U.S.C. § 3624(b)(1) ("[I]f the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate."); 28 C.F.R. § 541.3 (detailing prohibited acts and available sanctions, including forfeiting or withholding non-vested good time); 28 C.F.R. § 541.4 (stating that a prisoner will lose good conduct sentence credit as a mandatory disciplinary sanction if the prisoner's date of offense was on or after April 26, 1996, and, therefore, subject to the PLRA).

Here, Mr. Davis's sentence was properly classified as subject to the PLRA because the earliest date of offense for his multiple counts was January 14, 2007. (ECF No. 20-1 at 3-6).  As a result, his sentence is subject to the PRLA version of 18 U.S.C. §

3624(b), which mandates that GCT credits do not vest until the prisoner's release. *See, e.g., Bell v. Warden, FCI Tallahassee*, No. 4:19cv442-WS/MAF, 2022 WL 2134695, at *5 (N.D. Fla. Apr. 26, 2022) (explaining that "because Petitioner was sentenced on January 8, 2008 for offenses committed on June 2, 2007, her GCT will not vest until the date of her release, and it may be withdrawn at any point up until that date if Petitioner is found to have committed a prohibited act" and "[t]he fact that [her] sentence was imposed . . . under the [SRA] does not alter this conclusion"), *report and recommendation adopted*, No. 4:19cv442-WS/MAF, 2022 WL 2132715 (N.D. Fla. June 14, 2022); *Gary v. BOP*, No. 1:09-cv-02161-DLB (HC), 2010 WL 1611020, at *9 (E.D. Cal. Apr. 21, 2010) ("because each of Petitioner's convictions . . . were for offenses committed after April 26, 1996 . . . [h]is GCT is . . . governed by the current, PLRA version of section 3624(c)"); *Sejour v. Sanders*, No. CV 11-05744 DMG (AN), 2012 WL 1247185, at *8 (C.D. Cal. Jan. 18, 2012) ("Petitioner's offenses were committed in 2002 . . . so his sentence is not classified by the BOP as a SRA sentence, but instead as a PLRA sentence" and, thus, "none of his GCT credits vest until his release" (quotation omitted)), *report and recommendation adopted*, No. CV 11-05744 DMG (AN), 2012 WL 1252531 (C.D. Cal. Apr. 13, 2012). Further, to the extent Mr. Davis argues that forfeiture of his GCT "substantively modified" his sentence, his argument is incorrect because GCT does not change or impact the length of the sentence imposed by the sentencing court. *See Pepper v. United States,* 562 U.S. 476, 501 n.14 (2011) ("An award of good time credit by the [BOP] does not affect the length of a court-imposed sentence; rather, it is an administrative reward to provide an

incentive for prisoners to compl[y] with institutional disciplinary regulations." (quotations omitted)).

Because the disallowance of 108 days of GCT for misconduct did not violate the PLRA and did not substantively modify Mr. Davis's sentence, he is not entitled to habeas relief as to Claim Two.

### C. Claim Three: Disciplinary Hearing

Finally, Mr. Davis claims he was denied due process because the DHO "refused to allow the Applicant's witness to appear at the DHO hearing," which violated his right to present a defense. (ECF No. 1 at 18-22.). As noted above, the due process requirements for a prison disciplinary hearing require: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and (4) the DHO's findings to be supported by "some evidence" in the record. *See Hill*, 472 U.S. at 454 (citing *Wolff*, 418 U.S. at 563-67); *see also Howard v. U.S. Bureau of Prisons,* 487 F.3d 808, 812 (10th Cir. 2007) ("A disciplinary board's decision can be upheld by a reviewing court even if the evidence supporting the decision is meager." (quotation omitted)). The right to call and present witnesses under *Wolff* is not absolute; "it is 'circumscribed by the necessary mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Jordan v. Wiley,* 411 F. Appx. 201, 209 (10th Cir. 2011) (quoting *Howard,* 487 F.3d at 811). "And while prison officials must consider an inmate's request to call or confront a

particular witness . . . on an individualized basis, errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review." *Howard*, 487 F.3d at 813 (quotations and internal citations omitted).

      Here, there is no evidence in the record that the DHO refused to allow Mr. Davis the opportunity to call a witness in his defense. In fact, the DHO Report states that Mr. Davis waived his right to witnesses, and that he "requested no staff representative and/or witnesses." (ECF No. 21-1 at 66). But even if those statements are inaccurate, any error in refusing to allow Mr. Davis to call his witness would be harmless. Mr. Davis states that his witness, Jacob Scott, "was in the cell next door to [him]," and Mr. Scott told Mr. Davis "he was awake at 5:00 am count, and he did not see, or hear K. Bownman stop at [Mr. Davis's] cell and give any direct orders." (ECF No. 1 at 21). According to Mr. Davis, this witness "could have verbalized a more detailed account of what he saw and heard at 5:00 am count," and the testimony "would have corroborated what was really recorded by F-Unit C-Range security cameras," which "would have conflicted with what the Disciplinary Hearing Officer said he saw on the range security camera footage" because K. Bowan "did not stop and say anything to [Mr. Davis]," which "is exactly what [his] witness saw and heard." (*Id.* at 21-22). The record reflects that the DHO considered Mr. Davis's written statement to the UDC, which included the witness' account of the incident: "Scott . . . told [Mr. Davis] that he was up at 5 am count on 12/24/2023 and he said that he did not hear anyone give [Mr. Davis] a direct order." (ECF No. 21-1 at 66). Thus, Mr. Davis's claim that he was denied the ability to call his witness at the hearing is at best no more than a claim of harmless error because the DHO considered this information. *See*, *e.g., Jordan,* 411

F. App'x at 209-210 (concluding that because the officer provided a written statement to the DHO, petitioner's "claim that he was denied the ability to call this witness is at best no more than a claim of harmless error, as any information that this [witness] possessed was before the DHO"). Further, the record demonstrates that the DHO considered the investigating Lieutenant's review of the video footage, which "determined that Officer Bowman stopped at the cell door and appeared to say something." (ECF No. 21-1 at 67). Thus, contrary to Mr. Davis's position, the video footage does not contradict the allegations in the incident report.

Accordingly, the Court concludes that any error by the DHO in excluding Mr. Davis's witness was harmless, such that the minimum requirements of procedural due process were satisfied. As a result, Mr. Davis is not entitled to habeas relief as to Claim Three.

## IV.   Conclusion

The Court concludes that Mr. Davis is not entitled to habeas relief as to any of his claims. Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) is DENIED and this case is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal, he must also pay the full appellate filing fee

or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24. It is

FURTHER ORDERED that all pending motions, including the Motion for a Final Judgment as to Claim One (ECF No. 33) and the Motion for Temporary Restraining Order (ECF No. 34) are DENIED as moot.

DATED:  June 30, 2025                                     BY THE COURT:

                                                                              s/Scott T. Varholak
                                                                              Chief United States Magistrate Judge